MONUMENTAL BRONZE COMPANY, Appellant, v. THOMAS DOTY, Administrator of the Estate of ELIZABETH DOTY, Deceased, Respondent.

### St. Louis Court of Appeals, January 21, 1902.

1. **Witness, Competency of:** EVIDENCE, WHEN MATERIAL: PRACTICE, TRIAL. Where the competency of a witness is unchallenged, he should be permitted to testify as to any material fact, not inadmissible on other grounds.

2. **Presumptions:** ACT OF PARTIES: EVIDENCE. It is always presumed that the actions and conduct of parties are right instead of wrong, until the contrary is proven.

3. **Contract:** BREACH OF WARRANTY. Where a contract for the purchase of a monument contains the following clause on the matter of warranty: "This monument is fully warranted in every respect to be just as represented in our circulars," it was incumbent on the defendant to show what representations the circulars contained in that regard, and that the monument when erected did not conform to them, in order to sustain the defense of a breach of warranty.

4. ———: ———: INSTRUCTION: PRACTICE, TRIAL. In the case at bar, as no warranty was shown to have been either made or broken, as to the material of which the monument should consist, the instruction to that effect should have been given.

Appeal from Audrain Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

REVERSED AND REMANDED.

*F. R. Jesse* and *C. A. Barnes* for appellant.

The contract was complete in terms, and "the monument was fully warranted in every respect, just as represented in plaintiff's circulars," and so far as appears from the evidence the monument was identical with the one contracted for. Brown v. Weldon and Sankford, 27 Mo. App. 251. (2) That the court erred in refusing the following instruction asked by the plaintiff: "The court instructs the jury that there is no evidence of a breach of warranty in this case." (3) The warranties expressed in this contract excluded all other warranties. 1 Beach on the Modern Law of Contracts, page 335, sec. 267, and note 8; Zimmerman Mfg. Co. v. Dalph (Mich.), 62 N. W. 339. (4) Witness Schmidt was a competent witness for all purposes, even though the other party to the contract was dead, in an action by his principal against the administrator of the deceased. Stanton v. Ryan, 41 Mo. 510; Leahy v. Simpson's Admr., 60 Mo. App. 83. The contract showed upon its face that there was a change from "want" to "fear" in an inscription. The presumption would be that the change was made after the execution of the contract, for the change appears in pencil and in a different handwriting. Lawson on Presumptive Evidence, rule 85, page 460.

*Fry & Clay* for respondent.

Plaintiff throughout the trial tried the case on the theory that either an offer to return the monument had been made, or if not, then one was not necessary, the only question being whether there was a breach of warranty. "A party is bound by the theory he adopts in the trial of his case, and the appellate court will not reverse a case where appellant either expressly or impliedly consented to the theory upon which it was tried." Hargan v. Brady, 155 Mo. 659; Scharff v. Kling, 29 Mo. App. 549.

GOODE, J.—In April, 1899, Elizabeth Doty having seen an advertisement of monuments in white bronze, manufactured by the plaintiff, The Monumental Bronze Company, of Bridgeport, Connecticut, wrote to said company for a circular giving information in regard to such monuments. The matter was referred to Paul W. Schmidt, the company's agent at Milwaukee, Wisconsin. Afterwards in June, Miss Doty wrote to him to call on her at the Globe Hotel with a sample book of monumental designs. The interview between her and Schmidt resulted in her giving an order for a white bronze monument, which is as follows, omitting unimportant clauses:

"July 17, '99.—No. 594. Doty.

"ORDER AND AGREEMENT FOR WHITE BRONZE WORK.

"Manufactured by the Monumental Bronze Company, at Bridgeport, Conn. Purchaser's name, Lizzie Doty.

"Postoffice, Mexico, county of Audrain, State of Missouri.

"I hereby promise to pay the Monumental Bronze Company or order, three hundred and eighty-four dollars on receipt of, or in ten days from shipment of No. 594, white bronze monument in accordance with the description of said number five hundred and ninety-four, as per printed illustrations of said design, the inscription to be in raised letters, and in accordance with the instructions on the back hereof, with such extensions and abbreviations as may be customary or necessary. The receipt of this order by the Monumental Bronze Company is agreed by me to be an acceptance thereof, unless within fifteen days after its receipt at Bridgeport, Conn., notice is mailed to me at my address given below, postage paid, that it is not accepted by the company.

"Said work to be completed and shipped to Miss Lizzie Doty, to Mexico, county of Audrain, State of Missouri, as soon as convenient after the first day of July, 1899.

"Erect in the only cemetery, town of Mexico, Lot (don't know).

"Name of Supt.   (Don't know.)

"It is agreed that payment as per above terms will be made only to the treasurer of the Monumental Bronze Company, or his order.

"(Signed) Milwaukee, This 2nd day of June, 1899.

"Miss LIZZIE DOTY,

"Mexico, Mo.

*"This monument is fully warranted in every respect to be just as represented in our circulars.*

"Order received, June 5th, 1899.  Shipped July 17, 1899.

"Notice of shipment mailed July 17, 1899.

### DESCRIPTION.

"Front Shaft or Cap—Samuel S. Doty, born Oct. 8, 1808.

"Front Tablet.—Died Dec. 15, 1893.

"Front Plinth.—'He died as he lived, a Christian.'

"Front Shaft or Cap.—Mahala Doty, born March 23rd, 1820.

"Front Tablet—Died July 21, 1893.

"Front Plinth.—'The Lord is my Shepherd I shall not fear want."

('Fear' written in pencil below 'want'.)

"Caution to purchasers and agents:

"Read the following questions and fill in your answer 'Yes' opposite each one.   Then sign your name below.

"1st.   Are the names spelled correctly?   Yes.

"(Signed)        Miss LIZZIE DOTY."

The monument was erected in the cemetery at Mexico, Missouri, the latter part of July or the first of August.   Miss

Doty died during the latter month, having paid sixty-four dollars on the purchase price. After her death the administrator of her estate refused to make further payments. His reasons for so doing are best gathered from a letter written by the plaintiff to him on the eighth day of September, which he introduced in evidence, in answer to one his attorney had written the plaintiff in regard to the payment of its bill. It appears from said letter that defendant refused to pay for the monument; first, because the estate of the intestate was very small and there were a number of outstanding claims against it; and second, because he thought it was not worth the agreed price, but without stating or offering to pay what he considered it was worth. One of defendant's witnesses, the sexton of the cemetery, swore: "This is a large monument, artistic in finish and looks very nice." Another witness, who dealt in tombstones, said: "This is a nice-looking monument."

I. Testimony was introduced to prove the agent Schmidt induced the deceased to order the monument by false representations as to its durability and appearance. This attempt failed and the trial court properly instructed the jury there was no evidence that she was thus induced to give the order.

II. The jury were instructed that if they found from the evidence the contract required the words "The Lord is my Shepherd I shall not want" to be inscribed on the monument, and in the inscription the word "fear" was used instead of the word "want," and further found the failure to place thereon the inscription as above recited was a material deviation from the contract, they should return a verdict for the defendant. There was no evidence on which to base this charge. The contract as introduced contained both the words "want" and "fear," the latter being written in pencil below the former. No explanation was offered of why the word "fear" was written in the contract, or why the inscription contained that word instead of "want." But, inasmuch as both words were on the face of the contract, it must be held, in the absence of

evidence to the contrary, that the plaintiff company made the inscription according to the wish of the deceased and in conformity to the contract as actually made. This presumption obtains, because it is always presumed the actions and conduct of parties are right instead of wrong until the contrary is proven. Guest v. Railway Co., 77 Mo. App. 258; Lenox v. Harrison, 88 Mo. 491. The matter would have been cleared up, but for the objection made by the defendant to the witness Schmidt testifying why the word *"fear"* was substituted. The exclusion of this testimony was erroneous. Whether Schmidt, who was the agent of the plaintiff company in making the contract, was a competent witness, if the objection had been made to his competency because Miss Doty was dead, need not be decided as no such objection was made. The defendant permitted him to testify at length about his interviews with the deceased and about the contract; then cross-examined him in regard thereto, and only offered a general objection to his answering the question why the change of words was made. If Schmidt's competency as a witness was unchallenged, he should have been permitted to testify as to any material fact not inadmissible on other grounds, and this one was material and proper. The case would have to be reversed for that error in any event; but as there is nothing to show the contract was deviated from in the wording of the inscription and as the burden of showing a deviation was on the defendant, inasmuch as the instrument apparently authorized one word as much as the other, it must be held the inscription was correct.

III. The other defense relied on was that there was a breach of warranty by plaintiff. The instructions given by the court, when considered together, show this issue was submitted with respect to one warranty, or supposed warranty, only, namely; the material of which the monument should be made. The jury were told that if they found from the evidence plaintiff had contracted to furnish a monument of white

bronze, and instead thereof furnished one composed of zinc, the verdict should be for the defendant, unless they found from the evidence that a zinc monument was known to the trade generally as a white bronze monument.   The burden of showing the breach was imposed on the defendant and a verdict for plaintiff was directed unless the jury found from a preponderance of the evidence such a breach had been committed, or if they found plaintiff had substantially complied with the contract.

It can not be seriously contended that the evidence shows the monument in question was useless for the purpose for which it was sold, or that it was worth less than the stipulated price. There was no testimony of that kind, and, as the contract was not induced by fraud, and was made by a person who was *sui juris* at the time, it must be enforced unless some covenant or warranty contained in it was broken by the party seeking enforcement.   The trial court very properly took this view.

The difficulty with the defense of a broken warranty is, that there was no showing by the respondent as to what warranties were made by the monument company.   The contract, it will be observed, contains this clause bearing on the matter of warranties:   "This monument is fully warranted in every respect to be just as represented in our circulars."   The undisputed testimony shows the deceased called for the circulars and for a sample book of designs, and had an interview with the agent, Schmidt, before she gave the order.   As the contract refers to the circulars for the warranty or warranties made by the company as to the monument, it was incumbent on the defendant to show what representations the circulars contained in that regard, and that the monument when erected did not conform to them.   In no other mode could it be shown that any warranty concerning the material of which the monument should be constructed, was in fact made by the plaintiff, or that if made, it was broken.   For aught that can be

seen, the circulars may have explicitly stated it was to be composed of zinc. It is pretty clear that it must have been constructed of something else than bronze as bronze is not white. The essential point, however, is that the defendant wholly failed to show, or attempt to show, the circulars placed before the deceased represented that this monument should be composed of bronze. Presuming, in accordance with the doctrine above mentioned, that people act honestly and uprightly in their dealings until it is proven they act otherwise, we must take it that the plaintiff and its agents represented the actual facts to the deceased. Hence, as no warranty was shown to have been either made or broken, as to the material of which the monument should consist, the instruction which was requested to that effect should have been given as the evidence stood.

The judgment is, therefore, reversed and the cause remanded for another trial. All concur.